The next case this morning is 520-221 People v. Rowlands, arguing for the appellant Joshua Rowlands as Christopher Seeloff, arguing for the affiliate people of the state of Illinois as Timothy Berkley. Each side will have 10 minutes for their argument. The appellant will also have five minutes for rebuttal. Please note only the clerk is permitted to record these proceedings. Welcome back. Thank you, Your Honor. Okay, Mr. Seeloff, are you ready to proceed? Yes, Your Honor. Okay, you may do so. Your Honor, as counsel, may I please report? I am Assistant Appellate Defender Chris Seeloff, and I represent the defendant appellant in this case, Mr. Joshua Rowlands. Mr. Rowlands was not proven guilty beyond a reasonable doubt because the state failed to prove the necessary element of penetration, and alternatively, any ambiguity in the term sex organ should be construed in Mr. Rowlands' favor under the rule of lenity. Additionally, the jury was not properly instructed pursuant to Illinois Supreme Court Rule 431B, and the evidence was so closely balanced that Mr. Rowlands was denied his right to a fair trial. As to my first point, Mr. Rowlands was not proven guilty beyond a reasonable doubt because the state failed to prove the necessary element of penetration. The statute that Mr. Rowlands was charged under, 720 ILCS 5-11-1.40, requires proof of either an active contact, however slight, between the sex organ of one person and the body of another, or an act of sexual penetration. The state charged Mr. Rowlands with touching B.H.'s vagina. Several Illinois appellate courts, including this one, have held that the term vagina refers to a more specific internal structure than the term sex organ. Thus, in order to prove Mr. Rowlands touched B.H.'s vagina, the state would have to prove some form of penetration. The state does not dispute that it did not present any evidence of penetration. However, the cases of People v. Iqpo from the 2nd District, People v. Majette from the 4th District, and People v. Habel from this court make clear that where the state charges a defendant with touching a complainant's vagina, there must be some evidence of penetration in order to sustain the conviction. Accordingly, because the state charged Mr. Rowlands with touching B.H.'s vagina, but did not present any evidence of penetration, this court should reverse the conviction on count two. Alternatively, this court should find that the state was only—should this court find that the state was only required to prove that Mr. Rowlands made any contact, however slight, with B.H.'s sex organ, it should find that the term sex organ is ambiguous with regards to the evidence against Mr. Rowlands and resolve that ambiguity in favor of his innocence on count two. The state's arguments at the hearings on Mr. Rowlands' motions for directed verdict are instructive in this instance. At those hearings, the state argued that the jury could use the evidence that Mr. Rowlands was touching B.H.'s pubic hair to infer that he touched her sex organ. By the state's own argument, it did not believe that a bare allegation that Mr. Rowlands touched B.H.'s pubic hair was enough to sustain the charge of any contact, however slight. This argument comports with the ambiguity in the statute, which does not define the term sex organ. Appellate court decisions have labeled the sex organ as including the mons pubis, labia majorum, and labia minora. However, looking to medical literature for clarification on these terms provides only more ambiguity. For instance, the mons pubis is a pad of fatty tissue on which most of the pubic hair grows. However, pubic hair can also grow in places that would not normally be considered the sex organ on a woman, including the thighs and up to the waistline. Because of this ambiguity, it would not be fair for the jury to infer that any touching of B.H.'s pubic hair necessarily leads to the conclusion that Mr. Rowlands made any contact, however slight, with their sex organ. Indeed, allowing such an inference would effectively allow the state to achieve the higher conviction of predatory criminal sexual assault for conduct that only meets the standard of aggravated criminal sexual abuse. Predatory charges are limited to any touching of the sex organ or anus or penetration into those areas, while abuse charges are much broader, including fondling and the touching of sensitive areas over the clothes. By allowing Mr. Rowlands' conviction on count two to stand under this ambiguous framework, the state would achieve a much higher conviction for much broader acts. Instead, this court should find that the term sex organ is ambiguous as applied to the facts of Mr. Rowlands' case and reverses conviction on count two. As to my second point, because the state does not contest that the jury was improperly instructed, the only question is whether the evidence was closely balanced. The state relies heavily on B.H.'s recorded CAC interview to argue that the evidence against Mr. Rowlands was significant. However, many of B.H.'s statements are inconsistent, and the evidence is far closer than the state admits. As an initial matter, the state points to B.H.'s statements that Mr. Rowlands touched her stomach, bra, pajama bottoms, buttocks, and kissed her neck. At most, this is only evidence of aggravated criminal sexual abuse, not predatory criminal sexual assault. The state argues that B.H. said Mr. Rowlands put his hands, quote, fully into her underwear, unquote, before admitting that, quote, B.H. was able to prevent him from doing that, unquote. The state does not engage at all with Mr. Rowlands' argument that the CAC interview took place two weeks after the incident, reducing its credibility. As Ramankar testified at trial, the CAC has policies in place to interview victims as soon after an incident as possible in order to keep everyone's memory fresh. Due to staffing issues and an agency retreat, the interview with B.H. was delayed. This delay was not due to malice or bad faith, but it does credibility of B.H.'s statements and the CAC interview as a whole. The state also relies on B.H.'s change in behavior, relying on statements of B.H.'s guardian, Elizabeth Butler, to point out that she became sullen and withdraw after the sleepover in response to the incident. However, the state does not reconcile this point with the inconsistency between B.H.'s request to stay over on Saturday afternoon and this change in behavior. Why, if B.H. had been sexually assaulted by Mr. Rowlands on Saturday morning, did she and her friend call Butler and beg to stay over for another night? Why, if she had been sexually assaulted by Mr. Rowlands the night before, did she cry and say she did not want to leave on Sunday morning? The state has no answer for these inconsistencies, which make the evidence even more closely balanced. Finally, there is the state's argument that Mr. Rowlands' statements to police corroborate B.H.'s allegations. At most, Mr. Rowlands admits to hosting a sleepover for his stepdaughters where B.H. was present. Upon closer inspection of the recorded statement to police, Mr. Rowlands adamantly denies ever touching B.H. inappropriately and, in fact, explains that he felt she was the one being inappropriate by repeatedly moving his arm toward her. The jury was improperly instructed as to a number of factors, not the least of which being the right of Mr. Rowlands to not testify. It is very likely that the jury may well have believed that anyone accused of such crimes would feel There is no guarantee that the jury both understood and accepted that they were required to hold the state to its burden of proof, where they were not asked those questions as required by Rule 431B. These errors were clear and obvious, and the closely balanced nature of the evidence denied Mr. Rowlands his right to a fair and impartial jury. Accordingly, Mr. Rowlands respectfully requests that this court reverse his conviction for count two or, alternatively, vacate his conviction and remand for a new trial. If your honors have any questions, I'd be happy to answer them at this time. Thank you. Justice Welch? No questions. Justice Moore? No questions. Okay. Thank you, Mr. Selah. Mr. Berkley? May it please the court and counsel, my name is Tim Berkley. I represent the Appali, the people of the state of Illinois. I'd like to start with the dispute with the standard of review. We have a dispute as to the standard of review. The defense argues that it should be they believe that this case presents a question of law. The way they present the question is whether or not touching pubic hair is sufficient to satisfy the charge. I believe that the facts are in dispute. For instance, BH described the touching. She said, he didn't really touch my private parts that much, but he did a little bit. The defendant hasn't admitted to touching her in a sexual manner in any way. He doesn't even admit that he touched her pubic hair or that he touched her private parts a little bit. So there's a factual dispute that the jury had to resolve here. Counsel continues to argue this case as though this court should be resolving this as a legal question. I believe the proper standard is whether viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. With that said, I'd move on to the merits of his argument. It was confusing for me to understand the argument. I think his argument can be reduced to two parts. It appears that his argument isn't an argument that the jury instructions were insufficient. He doesn't challenge the sufficiency of the charge. What he challenges is the sufficiency of the evidence. And what he maintains is that the state should be held to what's alleged in the charging instrument. However, the jury did not have to decide those issues. The jury decided what was presented to them out of the jury instructions, which follows the statutory language, not the language of the charging instrument, to the degree that there's a deviation between the two. So first, let me just say that I think his argument can be reduced to two parts. First, he argues touching pubic hair alone is insufficient to establish contact with the sex organ, which he argues is an ambiguous term. What he asked this court to do is make a pronouncement that touching pubic hair is insufficient to sustain a charge of predatory sexual assault. And he cites the cases where, including cases from this court, where the focus had been on penetration. That's back when the statute required penetration to satisfy the charges. That's not true anymore. Now it just requires a touching. And I have that pretty well laid out in my brief. So as to the first part, the second issue he raises is whether the state was required to prove penetration because the charge alleged vagina instead of sex organ. And he points out that the vagina is an internal organ. So first, let me deal with the first issue that I think he addresses. Touching pubic hair alone is insufficient to establish contact with the sex organ. I don't believe this court has to make that finding. There was certainly evidence at the trial that the defendant touched this 12-year-old's pubic hair. But there's other evidence that was presented at trial, including the statement that I gave you where she said that he touched my private parts a little bit. But she also gave visual demonstrations as to where he touched her, as well as there was other evidence throughout her 45-minute interview. It was later in the interview that she recalled that he also touched her pubic hair. Now, of course, the state did argue that in trying to fend off a directed verdict. But of course, the state didn't argue all of the evidence, simply argued that one piece of evidence and argued that that was sufficient. But when you combine it and you look at the totality of the evidence to sufficiently prove the charge. Now, the next question has to do with whether or not the state has to prove penetration, because the indictment alleged vagina and defense maintains that vagina is an internal organ. There's lots of cases out there in which the court reviewed whether or not there was penetration, because it was required for the penetration. There has to be some intrusion, ever slight. So under the defendant's reading of the information, all of those cases would be faulty, because they said that touching the vagina is insufficient to show penetration. So I think the reasoning here is somewhat suspect with his argument would be that if the evidence came back that the defendant touched her labia or touched her clitoris, that would be insufficient under the defendant's version of events here, because the information said vagina. Now, when you look at the actual information, it says the defendant touched the vagina. It doesn't say he committed an act of sexual penetration. It also cites the statute and refers to it as predatory criminal sexual assault and says sexual contact with VH. The charging estimate is certainly sufficient to apprise the defendant of the nature of the charges against him. It's strange to me that this case, he's not raising an ineffective assistance of counsel for arguing that there's a variance between the information and what the jury had to decide based on their instructions. So it's a strange issue that he raises. To satisfy the charge, the only thing that is required was besides the ages, is that there was sexual contact. And given that she was only 12, under the sexual conduct, that can be anybody's part. So I'm not for sure his argument. I can't follow it as to why he thinks this is insufficient evidence. Other than that, there may be a variance between the charging instrument and the jury instructions, which he doesn't really raise. Moving on to the next issue, there's a clear 431B violation, and I laid that out in my brief. I also discussed why I believe the evidence is closely balanced. In this case, as compared to the cases that the defense relies upon, this case, the victim testified to the degree she was able before she broke down, and then her statements at the CAC came in as substantive evidence. She gave a very detailed statement, and they're very compelling. If you watch the videos, you'll see. And then the defendant's interview came in as state's evidence of guilt. It didn't come in by the defendant. It came in as evidence of guilt. So this isn't a case where the defendant testified and was subject to cross-examination, and we have two versions, like the cases that he cites to, where there is contrary evidence, and it was up to the jury to decide. It's much more closely balanced. This case isn't closely balanced. The defendant's video shows an evolving occurrence in which the defendant gives more and more detail throughout, adopts some of the language that was very clear on the statement. Defense counsel also did not cross-examine the victim in regards to her statements at the CAC. So that evidence came in without being subject to cross-examination. The defense counsel also indicated that, I'm sorry, the defendant also did not testify. So his statements that were being used against him came in without his ability to explain them away. So for that reason, I think the evidence is not closely balanced. Additionally, your honors, the defense counsel acknowledged that there was potentially very powerful evidence of a change in behavior after this event occurred. Defense counsel said that in his own closing argument, which he addressed that. So for those reasons, your honor, I would argue that the evidence in this case is not closely balanced, that the evidence of guilt is overwhelming. I think if you watch the video, her video, you'll be convinced of that as well. It's very compelling testimony from a 12-year-old. If there's any questions. No questions. No questions. Okay. Mr. Berkley, thank you for your argument. Mr. Seeloff, you have some rebuttal. You're on mute. Apologize. Briefly, I have two points on rebuttal. First, the state says it's confused as to the argument, and it doesn't really know where we're coming from, to which I don't blame the state. The statute, I would argue, is very poorly written. Sex organ, as we've argued extensively in the briefing in here today, is an ambiguous term. The appellate courts, including this court, have tried to further clarify by describing the sex organ as, including, among other things, the mons pubis, labia majorum, labia minorum, but there is still this ambiguity. We're getting closer to what the definition is, but it's still a very confusing term, and that speaks to the rule of lenity in this case. If the state is confused in how it charges the instrument, how it brings the charge, how it effectuates the prosecution of that charge, how it argues the charge on appeal, I don't blame them. I don't blame this court for being confused, and that's the reason why we have the rule of lenity, because of these ambiguities, because it is confusing to figure out what exactly the legislature is prohibiting. That ambiguity needs to come down on the favor in the side of the defendant. Furthermore, the state has mixed its standards today in the argument by saying vagina when it clearly meant sex organ, talking about if Mr. Rowlands had touched the clitoris or some exterior structure, but as this court and other appellate courts have said, the term vagina is meant to refer to the interior structure of the female anatomy, thereby requiring penetration. So when the state says any contact, however slight, with the vagina, that's a contradiction in terms. You can't have under this statute any contact, however slight, with the vagina. There is a penetration of the vagina or there's any contact, however slight, with the sex organ, and again, if this is all confusing, I don't blame you, and that's why we raised the rule of lenity issue. As to the second point regarding the closely balanced nature of the evidence, again, as we mentioned in the reply brief, the state mischaracterizes this as, you know, just powerful, powerful evidence and not at all closely balanced, that Mr. Rowlands goes, his story, quote, evolves over time. If taking that statement as technically true, what the state's really saying is that Mr. Rowlands gave more specific answers to more specific questions. They basically first asked him in the interview, tell us what happened, we want to know, and they were doing what we would hope police would do in an interrogation. They were asking open-ended questions, giving the suspect a chance, in this case Mr. Rowlands, a chance to explain without leading him to a point. They were trying to get as much broad information as possible, and then they asked specific questions about where people were in the room, which Mr. Rowlands explained that he remembered. They asked him if he'd be interested next to him. He said, yeah, we were watching a scary movie. They asked him, at any point, did you two touch? He said, yeah, you know, it was a scary movie. She held my hand sometimes because she was a 12-year-old who's scared. They said, at any point, did you inadvertently touch her? He said, I don't know what inadvertent means, and they kept using that word. He kept telling him, I don't know what inadvertent means. They eventually explained it to him and said, yeah, maybe I inadvertently touched her because she was pulling my hand over towards her. The state wants to paint this as Mr. Rowlands eventually just giving up and having a Perry Mason moment of, you caught me. It's simply not that. It is him abiding with the police's questions and following them to their logical conclusion, which is as more detailed questions are asked, more detailed answers are given, but he never once admits to anything more innocuous than having a sleepover with his stepdaughters and B.H. Preston and her moving his hand to touch her body and him feeling uncomfortable and moving away from that situation. He never once admits to anything inappropriate, and furthermore, the state doesn't discuss anything about B.H.'s inconsistency. Again, in their time here today, they don't discuss anything about B.H.'s inconsistent statements, and they don't discuss the disparity in the time with the CAC interview, and as a final point just on the standard of review, the facts are not in dispute. We do not dispute the testimony or facts that were presented at trial. We have never once disputed it. The only dispute we have is the legal conclusions that can be drawn from those facts. This court is well aware, and as we explained in our briefing, that means that the proper standard of review, at least for the first issue, is de novo, and with that, I have nothing further to present. If your honors have questions, I'd be happy to answer them. Justice Welch? No questions. Justice Moore? No questions. Okay, thank you, Mr. Seeloff. Thank you, Mr. Berkley. This matter will be taken under advisement. We'll issue an order in due course.